SNEED, J.,
delivered the opinion of the Court.
The complainant is the executor of the last will and testament of Samuel Winstead, deceased, and brings this bill of interpleader for instructions in the disposition of said estate. The will gives a life estate in four tracts of land and other property *47 to the testator’s widow, and provides for tbe sale thereof after the death of the widow, and by the sixth item of the will, the proceeds of said sale are disposed of as follows:
“It is my will and desire that the money arising from the sale of my four tracts of land, and all my other property, be equally divided between my brother John "Winstead’s children, and my nephew Honing, and my sister Mason Wilson and her children — all to be made equal.”
The pervading idea of the will, which was executed several years before the late civil war, seems to have been the emancipation of the large number of slaves then owned by the testator, and their transportation to Liberia, for which purpose -the will creates an ample fund by the sale of certain valuable' proi:>erty.
In a codicil executed some years after the writing of the will, occurs this provision:
“My will and desire is, and I do will and appoint that the moneys arising from the sale of the lands and personal property willed and directed to be sold after the death of my wife, be equally divided between the children of my brother John Winstead, and my nephew, John Honing, sister Mason Wilson, and the children of said Mason Wilson, each one to have an equal share; and should any of the above persons or beneficiaries object or contest my will, I will and direct that the share of such person or beneficiaries in this item of my will so contesting, be withheld and abstracted from his or her *48 share, and given to such of the persons or beneficiaries in this item of my will, as shall not contest the same.”
Pending the life estate, the interest in remainder of Samuel "Winstead, Jr., who was one of the children of the testator’s brother John, referred to, was levied on and sold — the said Samuel having survived the testator, but dying .before the falling in of the life estate, and after the said levy and sale. The purchasers of his said remainder interest are claiming the same, and are made parties defendant with the legatees and devisees under the will. The only question in controversy is, whether, under the provisions of the will the said Samuel "Winstead, Jr., took a. vested and transmissible interest in said estate, and whether the said purchasers acquired any interest by their said purchase. The Chancellor was of opinion, and so decreed, that the bequest in remainder was to a class, and that they only were entitled to it, who were surviving at the time of the falling in of the life estate. Erom this decree the purchaser appealed.
The criterion by which Courts are to be guided in solving a question often so vexed and so difficult, is the intention of the testator. And to ascertain this intention, we must look to the manner in which the testator has designated the objects of his bounty. The key to such an inquiry is, do the testator's words import that he intended that the remainder should go to any number of persons as a unit; or, that the persons who are the objects of his bounty *49 should each take a several interest at the falling in of the life estate? If he would transmit the estate in remainder to a class who may be surviving at the falling in of the particular estate, indefinite in number and of uncertain aggregate existence, it is not difficult to adopt operative words of devise appropriate to that purpose. If, on the other hand, it be his purpose to give a vested interest in remainder, the devisees or legatees may be indicated with such a degree of certainty, that no doubt can exist as to the persons intended, and the operative words should be such as to indicate the character and proportion of the estate intended to be given. He need not name all the parties, but he should identify them by such mention as to make his purpose manifest. The question, whether a remainder is vested or contingent, and whether, when an estate is devised to a number of persons in remainder, they take per capita as a vested transmissible present interest to be enjoyed in futuro, or per stirpes, as a class of uncertain existence or indefinite number, at the termination of the particular estate, is one which has given rise to much difficulty, not because of the absence of well established principles to guide the Courts, but on account of the difficulty of applying these principles to the multiform phases in which the question is presented, and the obscurity with which the intention of the testator is often involved by the inartificial framework of testamentary dispositions.
It is said, very truly, that “wills are frequently *50 drawn in such a rude and perplexed composition as to be almost impossible to be reduced to a consistent and intelligent meaning.” A remarkable instance is cited in the case of Doe v. Perratt, 6 Manning and Granger, 314, which was carried to the House of Lords, in which the twelve Judges were nearly equally divided on the questions whether a remainder vested in A. or B., and -when; or was void for uncertainty; and whether the words “first male heir of the branch of H.’s family” were to be considered as used by the testator in a technical or in a popular sense. These questions, it is said, led to very learned and elaborate discussions, and it is added there can be no provision which will avoid such questions, as long as a freedom of devising is allowed. They are said to be beyond the reach of the ingenuity of codifiers: 4 Kent, 632. The whole question must be resolved into one of intention at last, which Chancellor Kent calls the pole star, by which the Courts are to steer: 4 Kent, 537. This intention must be deduced, not from isolated parts of the will, but from the scope of all its parts which have the remotest reference to the question under construction. And if the instrument be evidently written by an unskilled hand, the common and popular sense of terms and expressions used must prevail rather than the technical sense, and in such cases the intention is often apparent in spite of strict grammatical restraints, or the effect of unskillful punctuation. And indeed, although the devolution of large estates is sometimes made to de- *51 pencl upon tbe effect of a semicolon, yet we recognize the force of an observation of the Supreme Court of the United States in Ewing v. Burnett, 11 Pet., 41, that punctuation is a most fallible standard by which to interpret a writing. The rule is thu£ stated in the English authorities: “ Such, indeed, is the respect paid to intention, that a construction may be made to support it, when plain upon the whole will, even against strict grammatical rules. But an express disposition cannot be controlled by inference:” 11 Ves., 148; 1 Ves., Jr., 269; 2 Swanst., 28; 2 Bulst., 178.
The testator is presumed to have used words in their ordinary sense, unless it appears from the context that he used them in some other sense; or unless by a reference to extrinsic circumstances, the use of the words in their ordinary sense would render the provision of the will inoperative or insensible : Mowatt v. Carow, 7 Paige, 328. And, again, where the will is evidently drawn by an unskilled hand, the terms used shall receive their popular, not their technical meaning: Harper v. Wilson, 2 A. K. Marsh., 466.
It has been repeatedly announced from this bench that the law favors the vesting of estates. And this is the prevailing doctrine of the Courts at the present day. It is said by a learned author of our own country that there can be no question that the tendency of the more recent decisions is clearly in favor of holding all estates in remainder to be vested when that can be fairly done without too great violence to the *52 language used: 2 Redf. Wills, 612. No remainder, says Chancellor Kent, will be construed to be contingent which may consistently with the intention be deemed vested: 4 Kent, 203. And it is elsewhere stated that where there is a doubt, the vested rather than the contingent remainder will be favored: Olney v. Hulls, 21 Pick., 311; Dingly v. Dingly, 5 Mass., 535; Shattuck v. Stedman, 2 Pick., 468.
It is said that the conflict between the cases upon this subject in our own books is more apparent than real. In Satterfield v. Ivey, the bequest was of a slave to Elizabeth Mayes for life, with remainder to her daughters. And it was held that the bequest was to a class of persons without specific designation by name, and the daughters alive at the time of the death of the mother constitute that class, and are entitled to the entire benefit of such bequest: 11 Hum., 58. In Bridgewater v. Gordon the testator gave his estate to his wife for life or widowhood, with provision for advancements to his children; and directed that the whole be equally divided between the children, share and share alike, at the termination of the particular estate; and it was held that the interest in remainder vested at the death of the testator, to be enjoyed in possession at the termination of the life estate, and that the children took a several interest in remainder as tenants in common: 2 Sneed, 5. In Beasly v. Jenkins, the will provided as follows: “I give all the balance of my land to my brother Hiram during his natural life; and at his death my *53 will is that all my lands be sold — excepting what I have given to my two nephews — and the proceeds of said lands to be equally divided between all my brothers’ and sister’s children; and it was held that the fund vests in the described class as a class, as it exists at the time fixed for distribution of the same; and under this clause it goes to the children of the brothers and sisters of the testator, as a class, living at the termination of the life estate: 2 Head, 191. In Harris v. Alderson, where the testator settled upon trustees a part of his estate, with directions that said property, and the increase thereof, should be taken care of for the express use and benefit of his daughter, and her children that she now has or may hereafter have, and applied to their use and benefit, and no other whatever, and at her death, to be equally divided between her children; it was held that the children living at the death of the testator, and those born afterwards, severally took vested and transmissible interests in remainder in said estate, to be enjoyed after the death of the mother: 4 Sneed, 250. This case, says the learned Judge, falls under the Bridgewater, and not under the Satterfield case — which two cases, he observes, are not in conflict with each other when correctly understood, but only present the two classes of cases which are so fully treated of in the books on that branch of the law: Id., 254. In the ease of Petty v. Moore, where the testator by his will left his entire estate, real and personal, to his wife during her life, with remainder to his eleven children, equally; and by a codicil, vested the share, whatever it might be, of *54 seven of said children in three of his sons in trust, to be managed for them after the death of the widow; and provided that in the event of either of said eleven •children dying without an heir of his or her body, that all of his or her share shall return to his estate, and be equally divided among those that may be living; it was held that the effect of said codicil was to give a present vested interest, with an executory devise, over upon the happening of the contingency named, and that upon the death pending the life estate of one of said seven children leaving no children, his share would be subject to pass in the ordinary course of descent to his representatives, real and personal, and upon the falling in of the life estate would be subject to his creditors: 5 Sneed, 126. In Alexander v. Walch, the will contained the following clause: “ I give to my sister Nancy all my landed estate, and negro man named Abe, and negro boy named Stephen, during her natural life, then to be sold and equally divided amongst my sisters and brothers,” and it was held that the remainder vested, and the sisters and brothers did not take as a class: 3 Head, 493.
Now, it will be observed that no two of these cases are identically the same, and each is made to depend upon what seemed to be the intention of the testator, as indicated by the language used. In ascertaining this intention, much force is to be given to the designated proportions in which the will directs that the estate is to pass. If the objects of the testator’s bounty and affection be his nephews and nieces, the offspring of several brothers and sisters — each class differing in *55 number — one having five children, another nine, another three, and another one, and he create by his will a life estate, and give the remainder to these nephews and nieces, naming the child of that sister who had but one child, and then designate the others as children of certain named brothers and sisters, and say they shall share equally in the said remainder — “each to have an equal share” — then we may safely assume that the testator meant that each individual should take a vested estate in remainder; or, that upon the falling in of the life estate, the same was to be divided into as many parts as there are nephews and nieces. For we cannot suppose, in the absence of an expressed intention so to do, that the testator'should provide that the child of one sister should have one-fourth of his estate, and that the others should have but one-seventeenth part each of the balance. It is said that the distinction as to taking per capita or per stirpes, will prevail when a’ bequest is made to “relations” or “family,” without mentioning the proportions in which the fund is to be divided; in which case, it is said, the statute of distributions will regulate the manner as well as the number, in which the parties are to take. And the case of Thomas v. Haile, in Cases tempore Talbot, 251, (said to be a book of great authority, though not a monument worthy of Lord Talbot’s virtues,) in which it was held that where the bequest is to relations to be equally divided among them, the division shall be per capita, although the state of the family is such as would require a distribution per stirpes, under the statute. And several illustrative cases are cited, as the case of Dug *56 dale v. Dugdale, 11 Beav., 402, where it was held that if the bequest is of a fund to be divided equally amongst the testator’s next of kin, both maternal and paternal, it is divisible between the two classes per capita and not per stirpes. And the case of Dowding v. Smith, 3 Beav., 541, in which it was held that where the bequest was to A. and to the children of B., to he equally divided, they take per capita. And so in the case of Abrey v. Newman, 16 Beav., 430, where there was a bequest of a fund to be equally divided between A. and wife, and B. and wife, for their lives, after which to be equally divided between the children of A. and B., it was held that the children took per capita. And these distinctions are very well illustrated by another case from the same authority, where there was a bequest to A. for life, after which, equally amongst her sisters or their children living at her decease; it was held that such of the children as were entitled, took per stirpes: Congreve v. Parker, 16 Beav., 435; Vide note, 2 Will. Ex., 1363.
It will be seen, therefore, from these authorities, that in the solution of analogous questions, the Courts have not failed to recognize the significance of the testator’s having indicated the proportions in which the remainder should be distributed, as evidence of his intention to create a vested and transmissible interest. Thus it will be observed that in our own cases, already cited, of Bridgewater v. Gordon, 2 Sneed; Harris v. Alderson, 4 Sneed; Petty v. Moore, 5 Sneed; and Alexander v. Walch, 3 Head, in which the estates in remainder were severally held to be vested, the pro *57 portions are designated by tbe words “equally divided;” while in the case of Satterfield v. Ivey, in which the bequest was to Elizabeth Mayes, for life, and remainder to her daughters, no proportions are indicated; and in the only case cited where the words “equally divided” are used, is that of Beasley v. Jenkins, 2 Head, where the bequest in remainder was held to be to a class, the operative words being, that the remainder was to be “equally divided between all my brothers’ and sisters’ children,” without the mention of any of them, nominatim.
That the legatees in remainder in the will of Samuel Winstead were all in his mind when he wrote his will, and were severally the objects of his affection and his bounty, is most manifest from the manner in which they are named in the will; and that he intended to vest each of them with an individual interest in the same, is apparent from his repeated declarations of an intention that one shall not have more than another, but that they shall share his bounty equally. The bequest is to “my brother John Winstead’s children, and my nephew Honing, and my sister Mason Wilson, and her children;” and the proportions are, “tó be equally divided;” and again, “all to be made equal;” and in the codicil, the beneficiaries are named in the same order, and the proportions again indicated by the words, “equally divided,” and by the still more significant expression, “ each one to have an equal share.” Under the rules and principles of interpretation already stated, we are of opinion that these parties in remainder each took, at the death of the testator, a *58 vested transmissible interest in remainder; and that áuch interest was a leviable interest, which might be subject to sale for the payment of debts, in an appropriate form of proceeding: Vide Lockwood & Co. v. Nye et al., 2 Swan, 519.
The decree of the Chancellor is reversed; but as the record does not advise us of the particular form of proceeding under which the purchasers of the interest of Samuel Winstead, Jr., claim the same, we remand the cause for further proceedings in the Chancery Court, without determining the validity of said levy and sale.